## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**PETRA PATTERSON**
16699 Swanson Cove Ct.
Hughesville, Maryland 20637

     *Plaintiff,*

*v.*

**HMR OF MARYLAND, LLC**
29449 Charlotte Hall Road
Charlotte Hall, Maryland 20622

     **SERVE ON:**
     The Corporation Trust, Incorporated
     2405 York Road
     Suite 201
     Lutherville Timonium MD 21093

     *Defendant.*

Civil Action No. _____

## COMPLAINT AND JURY DEMAND

Plaintiff Petra Patterson, by and through her undersigned counsel, James M Ray, II and Ray Legal Group, LLC, hereby files suit against HMR of Maryland, LLC and states as follows:

## THE NATURE OF THE ACTION

This is Petra Patterson's civil action against HMR of Maryland, LLC, seeking damages and/or other legal relief for the Defendant's violation of Ms. Patterson's rights under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, codified at 42 U.S.C. § 12101, *et seq.* (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 87 Stat. 355, as amended, codified at 29 U.S.C § 794 (the "Rehabilitation Act").

## THE PARTIES

1.      Plaintiff Petra Patterson ("Plaintiff" or "Ms. Patterson") is a Maryland citizen and a resident of Charles County, Maryland.

2.      Defendant HMR of Maryland, LLC ("Defendant" or "HMR") is a Maryland company with its principal office located in Charlotte Hall, Maryland.   The Defendant manages and operates the Charlotte Hall Veterans Home (the "Veterans Home") in St. Mary's County, Maryland.

3.      The Defendant, at all times, was acting through its employees, servants, agents, or other affiliates as to the matters alleged herein.

## JURISDICTION & VENUE

4.      The Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331 as a matter arising under federal law, specifically under 42 U.S.C. § 12117, as a case arising under the ADA, and under 29 U.S.C § 794, as a case arising under the Rehabilitation Act.

5.      Venue is proper in the District of Maryland, as the material events and omissions giving rise to the claim are alleged to have occurred in or near St. Mary's County, Maryland.

6.      The Plaintiff's ADA cause of action is authorized by 42 U.S.C., §12117.   The Plaintiff has a right to jury trial in this ADA discrimination action pursuant to 42 U.S.C. § 1981a.

7.      The Plaintiff's Rehabilitation Act cause of action is authorized by 29 U.S.C. § 794a.

8.      The Plaintiff has a right to trial by jury for her Rehabilitation Act cause of action.

9.      On April 19, 2021, the Plaintiff filed a charge with the EEOC, alleging disability discrimination and retaliation claims under the ADA. Charge No. 531-2021-01878.  On May 19,

2021, the EEOC issued a "Notice of Right to Sue" letter to the Plaintiff.[1]

10.      The Plaintiff has complied with all conditions precedent, administrative requirements, and/or legal preconditions to properly file and pursue this civil action and has exhausted any and all required administrative remedies.  This civil action is lawfully filed in this Court.  All conditions precedent have occurred or been performed.

### FACTS COMMON TO ALL COUNTS

11.      Ms. Patterson began her employment with the Defendant on November 17, 2014. She was employed as a RN ("Registered Nurse") Supervisor and worked at the Veterans Home.

12.      During her employment with the Defendant, Ms. Patterson always performed her job duties in a competent manner and met the Defendant's reasonable expectations.

13.      On July 15, 2020, Ms. Patterson was diagnosed with a well-differentiated adenocarcinoma of the endometrium ("uterine cancer") or ("endometrial cancer"). She notified the Defendant of her medical condition on August 31, 2020 when she applied for FMLA leave for an upcoming total hysterectomy that was scheduled for September 3, 2020.  Ms. Patterson was approved for FMLA leave. Following, her FMLA approval, Ms. Patterson promptly notified her direct supervisor Jimiere Smith, Director of Nursing, that she had endometriosis cancer and that she would be out of work from September 5, 2020 until October 3, 2020 under approved FMLA leave. On October 3, 2020, when Ms. Patterson was released by her physician to return to work, she brought

---

[1]  The Plaintiff's April 19, 2021 charge with the EEOC also included claims for age discrimination.  The Plaintiff anticipates amending this complaint to include claims for discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. (the "ADEA").  However, "[n]o civil action [under the ADEA] may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."  29 U.S.C. § 626(d)(1).

in medical documentation and submitted it to Dominic Thomas, the HR director for the Defendant. The medical documentation that Ms. Patterson submitted to Dominic Thomas contained a return to work certificate from Ms. Patterson's oncologist, and a schedule for her upcoming chemotherapy appointments. Dominic Thomas indicated that the chemotherapy treatments needed to be submitted to "our insurance company for approval." Ms. Patterson next coordinated with Audry Chase (who is in charge of scheduling for the Defendant) to ensure that Ms. Patterson had coverage for her scheduled chemotherapy appointments.  Ms. Patterson attended chemotherapy appointments on October 21, 2020, November 18, 2020, December 7, 2020, December 28, 2020, January 18, 2021, and February 8, 2021. However prior to many of these chemotherapy appointments, Ms. Patterson's replacement nurse never arrived on time, which caused her to call various nurses to beg them to come down to Ms. Patterson's unit (3C) to cover for her so she could attend chemotherapy. Ms. Patterson expressed her frustration to the Defendant regarding this problem because she was often late to her chemotherapy appointments because of this problem.

14.     Prior to her cancer diagnosis and chemotherapy treatments, Ms. Patterson frequently worked double shifts at the Veterans Home.  The Defendant expressed frustration and annoyance to Ms. Patterson because the Defendant, as a result of Ms. Patterson's disability, could no longer depend on Ms. Patterson to cover the second shifts and needed to locate other nurses to cover the shifts that Ms. Patterson had been working in addition to the disruptions in scheduling that occurred when replacement nurses would not show up as scheduled to cover the next shift when Ms. Patterson needed to leave for her chemotherapy sessions.

15.     Prior to leaving for her chemotherapy appointment on February 8, 2021, Ms. Patterson was working as a Charge Nurse and Supervisor in unit 3C from 11:00 p.m. to 7:00 a.m. She was responsible for supervising 8 units. At approximately 3:00 a.m., Ms. Patterson was

approached by GNA Ashley King (who was working in unit 2C) who told Ms. Patterson that she had witnessed another employee, named Agnes Dandridge, restrict a patient who had dementia by pulling the nurses' chart rack across the nurses' station to prevent the patient from wandering into other residents' room. According to Ms. King, Agnes Dandridge then redirected the patient into a chair.

16.     Ms. Patterson questioned Ms. King regarding the severity of the incident as it is not uncommon for nurses to redirect, or even at times, restrict the movements of patients suffering from dementia. Ms. King provided a vague account of the severity of the incident, which prompted Ms. Patterson to inform Ms. King that if an aggressive form of restraining took place that Ms. Patterson needed to be informed immediately.  Ms. Patterson instructed Ms. King to write a statement of what she observed so that Ms. Patterson could provide the statement to Director of Nursing Jimiere Smith for further investigation. Ms. King provided Ms. Patterson with a written statement at approximately 7:00 a.m., just as Ms. Patterson's shift was ending and she was leaving to attend her scheduled chemotherapy appointment.  Ms. Patterson took Ms. King's statement and slid the statement under Jimiere Smith's door knowing Ms. Smith would soon be in and available to handle the matter.  Ms. Patterson also informed Defendant's employee Audrey in staffing, that Ms. Patterson would return following her chemotherapy appointment to write a report.  Ms. Patterson also informed Audrey to tell Ms. Smith that Ms. Patterson was available via telephone if Ms. Smith needed to contact her while she was at her chemotherapy appointment.

17.     Ms. Patterson returned to work February 8, 2021, at 11:00 p.m. (that same day) following her chemotherapy appointment for her scheduled shift as Charge Nurse.  She worked a normal shift and was not made aware of any issues regarding the events of that morning.

18.     Ms. Patterson arrived to work the following day (February 9, 2021) at 11:00 p.m. to

work her regular shift. Ms. Patterson was approached by a co-worker and was informed that she was suspended.  Ms. Patterson immediately contacted Jimiere Smith, who told Ms. Patterson that she had been suspended for the incident that occurred on February 8, 2021. After being suspended for a week, Ms. Patterson was contacted by the Defendant and asked to return for a meeting on February 15, 2021 with Jimiere Smith. During this meeting, Ms. Patterson was told she was being terminated "for failing to report suspected abuse."

19.     Ms. Patterson has been discriminated against (i.e. suspended and terminated) due to her disability or for being regarded as having a disability in violation of the ADA.

20.     During her employment with the Defendant, Ms. Patterson always performed her job duties in a competent manner and met the Defendant's reasonable expectations.

21.     The non-discriminatory justification for Ms. Patterson's termination was a pretext. Ms. Patterson did report possible abuse of a patient by obtaining a statement from Ms. King and placing the statement under Director of Nursing Jimiere Smith's door prior to leaving the Veterans Home to go to her chemotherapy treatment.  Additionally, while the Defendant complained about the disruptions and inconvenience caused by Ms. Patterson's disability and her need for chemotherapy treatments, the Defendant did not take any action against the Plaintiff until the first available time that the Defendant thought it could justify terminating the Plaintiff in a way to hide its discriminatory and retaliatory intent.  Additionally, to the extent that the Defendant wanted a "scapegoat" for whatever occurred on February 8, 2021, the Defendant chose to terminate Ms. Patterson, the employee with a disability, even though Ms. Patterson had acted appropriately.

<u>**COUNT I**</u>
**ADA Discrimination -- § 42 U.S.C. § 12112(b)(1)(A)**

22.     The Plaintiff incorporates the preceding paragraphs as if set fully herein.

23.     The Defendant is an "employer" covered by the ADA as it is "engaged in an

industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *See* 42 U.S.C. § 12111(5).

24.     The Plaintiff is an "employee" under the ADA as she was employed by the Defendant. *See* 42 U.S.C. § 12111(4).   The Defendant also is a "covered entity" under 42 U.S.C. § 12111(4) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee.").

25.     42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."    "[T]he term 'discriminate against a qualified individual on the basis of disability' includes… limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;…." 42 U.S.C. § 12112(b)(1).

26.     Ms. Patterson has a "disability," as defined under 42 U.S.C. § 12102, because she has (a) a physical impairment (cancer) that substantially limits one or more of her major life activities (including fatigue and effects of chemotherapy treatment) (b) a record of these physical impairments and/or (c) been regarded by the Defendant as having a such a physical impairment.

27.     Ms. Patterson is a "qualified individual" because she, with or without reasonable accommodation, can perform the essential functions of a Charge Nurse.

28.     The Defendant terminated Ms. Patterson's employment because of her disabilities. But for Ms. Patterson's disabilities, the Defendant would not have discriminated against Ms. Patterson.

29.     As a direct and proximate cause of Defendant's unlawful actions, Ms. Patterson

was prejudiced, including having her employment terminated by the Defendant, and has suffered substantial pecuniary losses and other damages.

## <u>COUNT II</u>
### ADA Retaliation -- § 42 U.S.C. § 12003

30.     The Plaintiff incorporates the preceding paragraphs as if set fully herein.

31.     The Defendant is an "employer" covered by the ADA as it is "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  *See* 42 U.S.C. § 12111(5).

32.     The Plaintiff is an "employee" under the ADA as she was employed by the Defendant.  *See* 42 U.S.C. § 12111(4).   The Defendant also is a "covered entity" under 42 U.S.C. § 12111(4) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee.").

33.     42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter [126 Equal Opportunity for Individuals with Disabilities]."

34.     Ms. Patterson engaged in protected activity when she requested accommodations in her scheduling due to her disability and need for chemotherapy treatments.

35.     The Defendant terminated Ms. Patterson's employment because she requested accommodations due to her disabilities. But for Ms. Patterson's disabilities, the Defendant would not have discriminated against Ms. Patterson.

36.     As a direct and proximate cause of Defendant's unlawful actions, Ms. Patterson was prejudiced, including having her employment terminated by the Defendant, and has suffered

substantial pecuniary losses and other damages.

## COUNT III
### Rehabilitation Act Discrimination -- § 29 U.S.C. § 794

37.    The Plaintiff incorporates the preceding paragraphs as if set fully herein.

38.    29 U.S.C. § 794 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

39.    The Defendant is a "program or activity receiving Federal financial assistance" under 29 U.S.C § 794.  Specifically, the Defendant is a "corporation…or other private organization [where Federal financial] assistance is extended to such corporation…or other private organization…as a whole" and also is a "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation."  29 U.S.C. §794(b)(3).

40.    29 U.S.C. § 705(20) provides that the term "individual with a disability" means "any person who has a disability as defined in section 12102 of Title 42."

41.    Ms. Patterson has a "disability," as defined under 42 U.S.C. § 12102, because she has (a) a physical impairment (cancer) that substantially limits one or more of her major life activities (including fatigue and effects of chemotherapy treatment) (b) a record of these physical impairments and/or (c) been regarded by the Defendant as having a such a physical impairment.

42.    Ms. Patterson is a "qualified individual" because she, with or without reasonable accommodation, can perform the essential functions of a Charge Nurse.

43.    The Defendant terminated Ms. Patterson's employment solely because of her disabilities. But for Ms. Patterson's disabilities, the Defendant would not have discriminated

against Ms. Patterson.

44.     As a direct and proximate cause of Defendant's unlawful actions, Ms. Patterson was prejudiced, including having her employment terminated by the Defendant, and has suffered substantial pecuniary losses and other damages.

**COUNT IV**
**Rehabilitation Act Retaliation -- § 29 U.S.C. § 794**

45.     The Plaintiff incorporates the preceding paragraphs as if set fully herein.

46.     29 U.S.C. § 794 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

47.     The Defendant is a "program or activity receiving Federal financial assistance" under 29 U.S.C § 794.  Specifically, the Defendant is a "corporation [where Federal financial] assistance is extended to such corporation…as a whole" and also is a "corporation…which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation."  29 U.S.C. §794(b)(3).

48.     29 U.S.C. § 705(20) provides that the term "individual with a disability" means "any person who has a disability as defined in section 12102 of Title 42."

49.     Ms. Patterson engaged in protected activity when she requested accommodations in her scheduling due to her disability and need for chemotherapy treatments.

50.     The Defendant terminated Ms. Patterson's employment because she requested accommodations due to her disabilities. But for Ms. Patterson's disabilities, the Defendant would not have discriminated against Ms. Patterson.

10

51.     As a direct and proximate cause of Defendant's unlawful actions, Ms. Patterson was prejudiced, including having her employment terminated by the Defendant, and has suffered substantial pecuniary losses and other damages.

WHEREFORE, Plaintiff Petra Patterson respectfully prays that this Court grant the following relief:

a.      An order permanently enjoining and restraining the Defendant, their agents, officers, servants and employees from discriminating, interfering and/or retaliating against other employees due to their disabilities;

b.      Compensation for back pay, front pay, and compensation for other lost employment benefits, liquidated damages, compensatory damages, punitive damages, and costs and reasonable attorneys' fees against the Defendant in the amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

c.      Reinstatement; and

d.      Any and all additional relief as the Court may deem just and proper.

Respectfully Submitted,

**RAY LEGAL GROUP, LLC**

By:     /s/ James M. Ray
      James M. Ray, II (#012773)
      jim.ray@raylegalgroup.com
      8720 Georgia Avenue, Suite 803
      Silver Spring, Maryland 20910
      Phone: (301) 755-5656
      Fax:    (301) 755-5627

*Attorneys for Plaintiff*

## **PRAYER FOR JURY TRIAL**

Plaintiff Petra Patterson demands a trial by jury as to all issues so triable.


　　　　　/s/  James M. Ray, II
　　　　　James M. Ray, II