**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **PETRA PATTERSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 8:21-cv-01333-TJS** |
| **HMR OF MARYLAND, LLC,** | |
| **Defendant.** | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant HMR of Maryland, LLC ("HMR" or "Defendant"), by and through its undersigned counsel, submits the following Reply Memorandum of Law in further Support of its Motion for Summary Judgment against Plaintiff Petra Patterson ("Ms. Patterson" or "Plaintiff").

## I.   INTRODUCTION

The facts of this case are simple. The Plaintiff has tried to make them complicated by injecting speculation, assumptions, and the introduction of bits and pieces of testimony without the benefit of context. The ultimate question is whether HMR consistently applied discipline to those who, in the early hours of February 7, 2021, violated federal, state, and HMR rules against resident abuse and reporting suspected abuse. HMR did so; terminating all three persons who violated these policies, two of whom were not being treated for cancer. An objective and rational review of the record supports HMR's position that Plaintiff's cancer diagnosis and treatment plan for her diagnosis played no role whatsoever in its decision to end her employment. Instead, HMR ended her employment because she failed to exercise her responsibilities as the highest-ranking supervisor on site on February 7, 2021 to enforce HMR's Abuse Reporting Policy[1], and by extension, to protect HMR's residents from abuse. The record confirms that as the highest-ranking supervisor on the night shift, Ms. Patterson was trained on her reporting responsibilities to state regulators to investigate and report abuse and had previously had to submit such a report. The record also confirms that on February 7, 2021, an HMR employee acted in an improper manner towards a Charlotte Hall resident, actions that were subsequently determined to be abuse. The record also confirms that an agency nurse saw the abuse but failed to ensure the safety of the resident, only reporting it to Plaintiff a while after the incident occurred. In her capacity as the highest-ranking supervisor on site at that time, *and at the time that she learned of the incident*,

---

[1] HMR continues to use this defined phrase as a term of art consistent with its use in the opening brief.

Plaintiff was required to comply with HMR's Abuse Reporting Policy required to investigate, ensure the safety of the resident and report the episode to the state regulators. Plaintiff was solely responsible for doing so. No one else. Indeed, Plaintiff admits as much in the letter she submitted to HMR less than two weeks after her termination appealing that personnel action; a letter that does not contain a single reference to her cancer diagnosis or how HMR handled her need for treatment. Only months after her termination did Ms. Patterson attempt to associate her termination with her cancer diagnosis.

In an effort to overcome summary judgment, Plaintiff submits an Opposition ("Opp'n" ECF No. 44) so muddled and convoluted that the casual reader may believe that only a jury can resolve this matter. Plaintiff's arguments, however, fail as a matter of law because they are replete with factual and legal misrepresentations that are inadequate to defeat this motion. An objective and detailed review of the record reveals that Defendant has established that no genuine issues of material fact exist and that the Court should enter judgment as a matter of law in its favor.

## II.    ARGUMENT

### A.    There exists no genuine dispute as to Pretext, and so HMR is entitled to judgment as a matter of law

While Plaintiff spends a substantial segment of her Opposition arguing her *prima facie* case, the only issue the Court need address is whether she has created a genuine dispute of material fact as to pretext.[2] This is of little moment, however, because "the relevance of the *prima facie* case under *McDonnell Douglas* at the summary judgment stage is limited" and, instead, once a legitimate reason for the adverse action is proffered, the Court may properly focus on the "'ultimate question of discrimination *vel non*.'" *E.E.O.C. v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 120

---

[2] As explained *infra* Section II.B, Plaintiff's attempts at creating genuine disputes of material fact are procedurally improper and are not sufficient to overcome summary judgment.

(D. Md. 2019) (quoting *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010)). Because Defendant proffered its legitimate reason for ending Ms. Patterson's employment, it is presumed that the *prima facie* case has been met and the Court may move on to that "ultimate issue."[3] Plaintiff, however, cannot create a genuine dispute of material fact as to pretext and so the Court should enter judgment as a matter of law in HMR's favor.

### 1. HMR cites the proper standard and is not asking the Court to apply the pre-*Reeves* "Pretext-Plus" standard

Plaintiff contends that Defendant's proffered standard—that to prove pretext, the employee must demonstrate both that the proffered legitimate nondiscriminatory reason was not true *and* that unlawful discrimination was the real reason—is the "pretext-plus" standard rejected by the Supreme Court in its 2000 decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Plaintiff is wrong. In actuality, the standard that Plaintiff proffers is the exact same one as the two-part approach proffered by Defendant, just worded differently. After all, both Parties rely heavily on *St. Mary's Honor's Center v. Hicks*, 509 U.S. 502, 535-36 (1993). Regardless of the wording, to ultimately prevail on a discrimination claim, the employee must prove that unlawful and *intentional* discrimination and/or retaliation is the real reason for the employer's actions. *E.g.*, *Reeves*, 530 U.S. at 143; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019).[4] It is inherently necessary that, before one can get to this point, one disproves—or at the summary judgment stage, create a genuine dispute of material fact about—the employer's proffered reason for the adverse action. *Reeves*, 530 U.S. at 143; *Burdine*, 450 U.S. at 253; *St. Mary's Honor Center*, 509 U.S. at 206.

---

[3] This is why Defendant did not attack Plaintiff's *prima facie* case in its opening brief.

[4] This case stems from motion for judgment as a matter of law after the entry of a jury verdict but is still helpful in determining what kinds of evidence may be used to survive summary judgment and reach a jury.

In contrast, the "pretext-plus" does not change *what* the employee must prove, but *how* the employee must prove it. "Pretext-plus" required that the plaintiff produce new evidence to prove pretext separate and apart from the evidence proffered to establish the causation element in the underlying *prima facie* case. *Westmoreland*, 924 F.3d at 726 ("[T]hese courts had required, as a matter of law, that an employee introduce *new* evidence, separate from her *prima facie* case, that *not only* undercut the employer's justification *but also* showed a specific and discriminatory motive." (citing *Reeves*, 530 U.S. at 140-41)); *Leake v. Ryan's Fam. Steakhouse*, 5 F. App'x 228, 232 (4th Cir. 2001). *Reeves* merely clarified that no *new* evidence is necessary at the pretext stage, and that "evidence establishing the plaintiff's *prima facie* case" may be used to meet this obligation. *Reeves*, 530 U.S. at 143. The *Reeves* court made clear, however, that it was insufficient to merely present evidence undermining employer's proffer without also creating the inference of discrimination is not sufficient. *Saulsberry v. Savannah River Remediation, LLC*, 2019 WL 3711978, at *7 (D.S.C. Aug. 7, 2019) ("Importantly, rejecting an employer's legitimate, nondiscriminatory reason does not compel judgment for a plaintiff because the ultimate question is whether a plaintiff is the victim of unlawful discrimination." (citing *Reeves*, 530 U.S. at 146-47 (2000) and *St. Mary's Honor Ctr.*, 509 U.S. at 511, 524)).

HMR has never argued that Plaintiff must produce separate evidence at the pretext phase to survive summary judgment. This is impossible given the fact that Defendant did not even address Plaintiff's *prima facie* case in its opening brief. Instead, Plaintiff is asking the Court to deviate from *Reeves* and find that merely casting any doubt—no matter how insignificant—is sufficient to create a genuine issue of material fact as to pretext, and reach a jury as a result. *Reeves*, 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does

not necessarily establish that the plaintiff's proffered reason . . . is correct.' In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524, 519)).[5]

When all is said and done, the standard to create a genuine dispute of material fact as to pretext remains the same: Plaintiff's proffer of evidence *in total* must be enough to demonstrate that proffered reason is *false* (or unworthy of credence), *and* that the *real* reason is unlawful discrimination. Plaintiff fails to do so here and so the Court should enter judgment as a matter of law in HMR's favor.

### 2. Plaintiff cannot create a dispute of material fact that HMR's proffered reason is false and not worthy of credence.

Plaintiff attempts to create a genuine dispute as to pretext by arguing inconsistent or the inaccurate application of company policy and comparator evidence. Both fail.

### a. No genuine dispute of material fact as to interpretation of the Abuse Reporting Policy

Plaintiff first argues that "multiple genuine disputes of material fact exist regarding whether Ms. Patterson *actually* violated any of HMR's policies and procedures justifying termination." (Opp'n 37 (emphasis added).) This is both factually and legally inaccurate. It is factually inaccurate because the record, taken as a whole, supports HMR's position that the Abuse Reporting Policy—including but not limited to[6] the two-hour reporting window—begins when the

---

[5] It is also important to note that *Reeves* arose from a post-jury verdict Rule 50 motion for judgment as a matter of law, and not under Rule 56. As such, *Reeves's* references to the "fact-finder" refers to the post-trial nature of the appeal. It does not mean, as Plaintiff seems to imply, that a finder of fact is the only avenue through which a discrimination claim can be addressed. (Opp'n 36-37.) This Court recognizes summary judgment as an appropriate procedural mechanism to reach pre-trial resolution for cases. Taken to its logical end, Plaintiff's request that the Court "not deprive the trier of fact the issue of pretext because 'the ultimate question of liability ordinarily should not be taken from the jury'" would preclude such an affirmative award of summary judgment. (Opp'n 36-37 (quoting *Reeves*, 530 U.S. at 155).)

[6] As explained in depth in Defendant's opening brief, HMR concluded that Plaintiff violated the other components of the Abuse Reporting Policy as well, i.e., failure to immediately assess and secure the safety of the resident by separating that person from the purported abuser and also suspending the alleged abuser pending investigation. The record is irrefutable that Plaintiff did not take these steps, but instead permitted the resident to be in direct contact with

responsible supervisor is informed. (Statement of Undisputed Material Facts ("SUMF") ¶¶ 4-5, ECF No. 38.) It is legally inaccurate because whether or not Ms. Patterson actually violated the Abuse Reporting Policy is irrelevant. What is relevant is if she can cast doubt on HMR's contention that at the time it took adverse action against her, it had a good faith belief she had violated the Abuse Reporting Policy.

The first purported "dispute" about when the Abuse Reporting Policy is triggered—including the commencement of the two-hours window—is easily resolved in HMR's favor. The timeframe in which suspected abuse must be reported is a matter of federal law, which requires that HMR report that "all alleged violations involving abuse, neglect, exploitation or mistreatment, . . . are reported immediately, but not later than 2 hours after the allegation is made, if the events that caused the allegation involve abuse . . . ." 42 C.F.R. § 483.12(c)(1). This provision is repeated almost verbatim in HMR's Abuse and Reporting Manual, which states that "the facility will have a process in place to report allegations of abuse, . . . to the required agencies immediately or no later than two (2) hours after the allegation is made if the events that cause the allegation involve abuse . . . ." (SUMF ¶ 14, Schramm-Strosser Decl. Ex. 1, at HMR_0000026.) The basic principles of agency law necessitate that notice only applies to the entity when the allegation is made to the appropriate member of management, and so it is only when the allegation "is made" to appropriate management officials that the clock (literally) starts ticking. *E.g.*, *St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 819 F.3d 728, 734 (4th Cir. 2016) ("Because a corporation is a fiction that can have knowledge only through its agents, knowledge of an agent acquired within the scope of the agency relationship is imputable to the corporation." (citing *Plitt v. Kellam*, 222 Md. 383, 391 n.4 (1960))) So, Plaintiff's contention that HMR's policy is unclear and/or supports her contention

---

the purported abuser for at least five (5) more hours *after* she learned of the incident from Ms. King. (SUMF ¶¶ 47-48, 51-55, 67.)

that she did nothing wrong fails as a matter of law. Neither can Plaintiff create a genuine dispute of material fact regarding HMR's application of this two-hour window to her conduct on February 7, 2021. All three of HMR's witnesses—including Ms. Jones who was designated as the Rule 30(b)(6) witness on this topic—testified that the two-hour window commences once the responsible management official is told of the incident. (SUMF ¶¶ 4-5 (citing Smith Dep. 19:9-20, 20:3-12, 21:2-17; Jones Dep. 18:7-19:1, 59:11-60:5; Keogler Dep. 12:1-19).[7]) Indeed, Plaintiff testified that "it was really pounded into us that we have to report it within two hours" and that "[t]he company would get in trouble" if this did not occur. (Patterson Dep. 47:4-10.)[8]

Plaintiff tries to manufacture a dispute of material fact out of Mr. Keogler's testimony that the two-hour window starts at the time the incident of alleged abuse is occurs, as opposed to the time it is reported to the applicable management official. (Opp'n 8-9.) This argument does not work. Mr. Keogler testified that the two-hour window is the moment "[HMR] becomes aware of it." (Keogler Dep. 12:17-19.) This aligns with the interpretation of the notice requirement being triggered when HMR's designated management officials learned of the incident. So, Mr. Keogler's testimony is not inconsistent with HMR's stated position or previous explanations for Ms. Patterson's termination. *Cf. E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) (inference of pretext may arise from inconsistencies in the employer's—*i.e.*, the corporate entity itself—explanations for the adverse employment action).

To the extent that one could consider Mr. Keogler's testimony internally inconsistent with

---

[7] All deposition citations are included in the transcripts attached to the opening brief and/or Plaintiff's opposition.

[8] So as not to be accused of misrepresenting Plaintiff's testimony, it is true that Ms. Patterson believed her obligations were to "call [Ms. Smith] – and then I go write the forms. I fax everything to the whole administrat[ion]." (Patterson Dep. 47:18-48:3.) Plaintiff's failure to grasp that her fax went to the regulatory agencies (*id.* at 55:22-56:10) is of no moment. An employee's mistake in understanding a policy does not preclude the employer from issuing discipline for that violation, and even assuming it did, by her own testimony, Plaintiff violated the policy as even she understood it because she did not reach out to Ms. Smith nor did she send the fax.

himself, it does not create a genuine dispute of material fact because regardless the record supports HMR's reasonable conclusion that she violated the policy under either reading. Specifically:

- Assuming the two-hour window began running at the time Plaintiff was notified, which is HMR's official position from the beginning of this litigation, and she learned of the incident between 2:00 a.m. – 3:00 a.m. when Ms. Patterson learned of the incident, the reporting window closed at 5:00 a.m. at the latest; or

- Assuming the two-hour window commenced at the time of the incident, as Mr. Keogler incorrectly testified, at the time it made the decision to suspend/terminate Ms. Patterson, HMR had reason to believe that she learned of the incident as early as 2:00 a.m., which fell at least partially within the two-hour period after the event took place at 12:40 a.m. Mr. Keogler testified that he believed that Ms. Patterson had learned of the incident earlier than 3:00 a.m. (Keogler Dep. 21:5-19.)[9]

Plaintiff now has the burden to point to evidence that undermines the reasonableness of HMR's belief, which she fails to do. This is of great importance because, again, what matters for the purposes of summary judgment is not *whether* Ms. Patterson actually violated the Abuse Reporting Policy, as Ms. Patterson would have the Court believe. Instead, it is whether HMR had a good faith belief that she had violated the Abuse Reporting Policy when it made the decision to suspend and terminate her employment. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

Plaintiff tries, and fails, to undermine HMR's good faith basis argument by claiming that HMR is being disingenuous about when it asserts Plaintiff learned of the incident. Neither prevail. As to the timing issue, Plaintiff asserts that "HMR was aware, <u>from the very beginning</u>, that the absolute earliest she could have been 'put on notice' of the suspected abuse incident was 3:00 a.m." (Opp'n 4-5.) Not only is Plaintiff being extremely liberal with the record by making this statement, she is also asking the Court to engage in a credibility determination about the time that

---

[9] Notably, while Plaintiff makes much to do about Mr. Keogler's testimony on this subject, she omits any reference to this key point.

she learned of the incident, which is improper at this procedural stage and should be ignored. *Hoffman v. Hoover*, 2022 WL 888435, at *5 (D. Md. Mar. 25, 2022) ("'[W]hen challenges to witness' credibility are <u>all</u> that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.'" (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008))).

At the time HMR made the decision to suspend and terminate Plaintiff, it had the following information available to it: Ms. King's statement that she reported the incident to Ms. Patterson between 2:00 a.m. and 3:00 a.m. (Opp'n Ex. 6, HMR_0000918), a statement from another witness, Amy St. Claire, stating that she recalled seeing Ms. King approach Ms. Patterson "maybe around or almost 3:00 a.m." (Opp'n Ex. 2, HMR_0000657), and Ms. Patterson's initial statement claiming that Ms. King approached her at 5:00 a.m. (Opp'n Ex. 12, HMR_0000659.) It was not until Ms. Patterson's internal appeal of her termination that she claimed Ms. King approached her at 3:00 a.m. (Opp'n Ex. 1, HMR_0000303.) Based on the statements from Ms. King and Ms. St. Claire, HMR assessed that Ms. Patterson had learned of the incident anywhere between 2:00 a.m. – 3:00 a.m. (SUMF ¶ 51.) This is supported by the email from Ms. Jones to Ms. Walls, the corporate compliance representative, stating in which she gave this same timeframe. (Opp'n Ex. 6, HMR_0000918.) Plaintiff does not present any objective evidence as to why HMR should have believed Ms. St. Claire over Ms. King, and so it is not for the Court to question HMR's decision to believe that Ms. King reported the incident to Ms. Patterson during that hour-long period.

Plaintiff also attempts to escape dismissal by arguing that only a jury can properly determine whether or not Ms. King's statements that morning put her "on notice" of an incident of suspected abuse, thereby triggering the Abuse Reporting Policy. (Opp'n 6.) Again, this is the wrong assessment. When evaluating whether an employer terminated an employee for legitimate

9

and lawful reasons, the "question at issue is whether the 'decision maker' acted with discriminatory animus, only the 'perception of the decision maker' is 'relevant' to the question." *Mfs. & Traders Tr. Co.*, 429 F. Supp. 2d at 121-22 (quoting *Hux v. City of Newport News*, 451 F.3d 311, 319 (4th Cir. 2006)). As such, Ms. Patterson's personal and subjective belief—without more—about the validity of her conduct is irrelevant. *See, e.g.*, *Vessells v. Kaydon Ring & Seal*, 2018 WL 3122454, at *7 (D. Md. June 26, 2018). Nevertheless, Plaintiff argues that HMR's explanation is not believable because HMR only confirmed that abuse had in fact occurred after it reviewed the security camera footage. (Opp'n 13.) The record does not support her position. The trigger for the Abuse Reporting Policy is *suspected* or actual abuse. (SUMF ¶ 3.) Mr. Keogler testified that he determined Ms. Patterson had violated the Abuse Reporting Policy because he believed Ms. King's statements to Ms. Patterson—*as Plaintiff wrote in her first witness statement*—were sufficient to place her on notice of *suspected* abuse. (Keogler Dep. 28:20-29:3, 36:5-11; SUMF ¶¶ 90-91.) Messrs. Smith and Jones reached the same conclusion. (SUMF ¶¶ 60, 71.) Thus, any argument that HMR made its decision to terminate Ms. Patterson based on information she did not have, i.e., the video footage, is a red-herring.[10]

Because Plaintiff has not managed to create any dispute of material fact that HMR's offered reason is not worthy of credence, Defendant is entitled to judgment as a matter of law.

> **b.    No genuine dispute of material fact as to application of the Abuse Reporting Policy**

Plaintiff next argues that HMR's proffered explanation is pretextual because it treated Ms. Jones differently than her. (Opp'n 31-32.) Plaintiff argues, "the <u>only</u> thing separating the two is Ms. Patterson's disability." (*Id.* at 31.) Incorrect; the thing separating them is that Ms. Jones did

---

[10] For these same reasons the Court should also disregard Plaintiff's factually unsupported argument that HMR's witnesses agreed with her that Ms. King's statements to her were not sufficient to trigger the Abuse Reporting Policy. (Opp'n 13.)

not violate company policy and Ms. Patterson did. A violation that Ms. Patterson admitted to *in writing* less than two-weeks after her termination.[11] (SUMF ¶¶ 51, 99; Patterson Dep. Ex. 10.)

The record evidence on this point is straight forward and cannot, in good faith, be challenged. (SUMF ¶¶ 4, 9, 11, 15, 47-48, 51-52, 59, 84.) Plaintiff utterly ignores this clear record and continues to argue that Ms. Jones violated the same company policy but was treated differently than her. (Opp'n 31-32.) Knowing she does not have objective facts to support her position, she tries to overcome summary judgment by trying to muddy the waters by passing judgment on HMR's investigation and steps taken, and asks the Court to do the same. The ADA and the rehabilitation Act, however, are not avenues through which the Courts can second-guess an employer's management decisions. *DeJarnette*, 133 F.3d at 298-99 (noting that federal courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by" defendants and civil right statutes are "not a vehicle for substituting the judgment of a court for that of the employer"). No reasonable juror could ever find in Plaintiff's favor on this point because it requires that person to ignore the entirety of the record and suspend all logical reasoning.[12] Even assuming, *arguendo*, that a fact-finder could believe that Ms. Jones violated the

---

[11] Plaintiff's acrobatics to undermine her own admission is irrelevant and procedurally incorrect. HMR and not twisted her words, she wrote "I was not an abuser, I only failed to correctly report suspected abuse in a timely manner." (Patterson Dep. Ex. 10 at HMR_0000762.) There is no reason that this statement should not be taken as an admission. Plaintiff has presented no sworn testimony through either her deposition or an affidavit to support the arguments made in her opposition that she did not mean what she wrote in this grievance, and even if she had, she is asking the Court to engage in a credibility determination that is not permissible at this stage.

[12] Plaintiff's argument does not make logical sense. First, she argues that she was not under any obligation to report the incident because Ms. King's statements to her did not rise to the level of "suspected abuse." (Opp'n 4-5, 15-16, 28.) She then argues that Ms. King made the same, or similar, disclosures to Ms. Jones. (*Id.* at 6.) Yet, somehow, the very same statements by Ms. King that were *not* sufficient to trigger the Abuse Reporting Policy for Ms. Patterson now *are* sufficient to trigger that obligation for Ms. Jones. (*Id.* at 32.) Plaintiff cannot have it both ways. Either Ms. King's statements were sufficient to trigger the reporting obligation—which equates to an admission by Ms. Patterson that she, as the responsible member of management, should have made the report yet failed to do it, and that Ms. Jones did *not* violate the policy because the two-hour window had already lapsed—or they were not sufficient to trigger the reporting obligation, thereby acquitting both Ms. Patterson and Ms. Jones of wrongdoing. This argument shows the lengths to which Ms. Patterson has to contort the facts to support her claim. Nonetheless, it is irrelevant because Ms. Jones did not violate the Abuse Reporting Policy.

Abuse Reporting Policy, which HMR strenuously denies, Plaintiff has not produced any corroborated evidence to show that in February 2021, HMR believed Ms. Jones *had* violated the policy, but chose not to take action against her. Without such evidence, Plaintiff's mere speculations are insufficient to overcome summary judgment. *E.g.*, *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (holding that the plaintiff's discrimination claim cannot overcome summary judgment using comparator evidence where she does not present any evidence that persons other than her "engaged in the same conduct" for which she was penalized).

What the record does reflect is that HMR treated Ms. Patterson in the same manner as the other two persons involved in the incident, Ms. Dandridge and Ms. King. It is true that neither woman is similarly situated to Ms. Patterson, but the uniform treatment of all persons involved weighs against a finding of unlawful animus. The indisputable facts are as follows:

- Each person violated an HMR policy: Ms. Dandridge violated the policy against abusing residents; Ms. King violated the Abuse Reporting Policy by failing to immediately report what she saw to Ms. Patterson; and Ms. Patterson violated the Abuse Reporting Policy by not ensuring the safety of the patient and by not submitting the initial report (SUMF ¶¶ 49-57, 61, 80);

- As the supervisor and one tasked with enforcing HMR's policies, Ms. Patterson had more, not less, culpability for failing to comply with the policies (*See* SUMF ¶¶ 21-22);

- HMR obtained written statements from each of them and evaluated them before making the decision take adverse action against them (SUMF ¶¶ 86-91; Schramm-Strosser Decl. Ex 6, HMR_0000653-659);

- HMR suspended—or in Ms. King's case, revoked her credentials—all involved pending the results of the investigation, with Ms. King and Ms. Dandridge being suspended *before* Ms. Patterson (SUMF ¶ 81, HMR_0000918); and

- At the conclusion of the investigation, HMR terminated—in Ms. King's case, permanently revoked her credentials—all involved for their respective violations of company policy. (SUMF ¶¶ 84, 93-94; Schramm-Strosser Reply Decl. ¶ 2, Ex. 11, HMR_0000850 (termination paperwork for Ms. Dandridge) & Ex. 10, HMR_0000847

(February 11, 2021 email correspondence re: termination of those involved in the February 7, 2021 incident), attached hereto as Exhibit A.

There is no evidence in the record that either Ms. King or Ms. Dandridge had disabilities or that they otherwise engaged in protected activity, and yet HMR terminated them for violating company policy. As the ranking supervisor, Ms. Patterson had even more responsibility to ensure the safety of HMR's residents and to comply with the federal and state regulatory requirements as set out in the Abuse Reporting Policy. HMR saw no reason justifying inconsistent treatment of all involved. Nothing was orchestrated or used as a farce, instead HMR investigated the matter pursuant to its policies and took the disciplinary steps necessary.

### 3.   No other record evidence exists that Plaintiff can rely on to create an inference of discriminatory or retaliatory animus

As explained above, Plaintiff fails to create a genuine dispute of material fact that HMR's proffered reasons for her termination are false. The Court may stop its assessment here because, without this, Plaintiff cannot prevail on her pretext argument as a matter of law. Nonetheless, HMR will briefly analyze Plaintiff's other remaining attempts to gin up sufficient questions of discriminatory and retaliatory animus to survive summary judgment.[13]

As explained in HMR's opening brief, the record does not contain any evidence of HMR's management making negative comments about Plaintiff's cancer diagnosis, her leave of absence, or her chemotherapy schedule. In response, Plaintiff points to her own deposition and claims that in response to her inquiry at the termination meeting whether she was being fired because of her cancer Ms. Jones remarked "you should have taken better care of yourself." (Opp'n 32; Patterson Dep. 66:13-20, 70:1-6.) Plaintiff is correct that Ms. Jones denies making this statement but is incorrect that this dispute of fact is a material one sufficient to establish retaliatory animus because

---

[13] For those facts pertaining to Plaintiff's retaliation claim, HMR's argument here applies to both the *prima facie* and pretext evidentiary stages.

it is "contradicted by significant other competent evidence . . . [and therefore] does not create a *genuine* dispute." *Chestnut v. Lue*, 2020 WL 201056, at *7 (W.D. Va. Jan. 13, 2020). Not only does Ms. Jones deny making this statement, but Ms. Smith has no recollection of it either and, most tellingly, Plaintiff makes no mention of it in her response to Defendant's interrogatories, or in her February 23, 2021 internal grievance letter she submitted less than ten (10) days after her termination. (Smith Dep. 78:1-5 (no mention of cancer during termination meeting); SUMF ¶ 99.) assuming the facts in the light most favorable to Plaintiff, the facial neutrality of the comment and the lack of clear nexus to Plaintiff's protected class status is not enough to create an inference of discrimination significant enough to overcome summary judgment. *E.g.*, *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 (4th Cir. 2002) (recognizing that subjective beliefs about discrimination are "insufficient to create a genuine issue of material fact as to any discriminatory conduct on [employer's] part"). Plaintiff also fails to present any evidence of discriminatory or retaliatory animus by the other HMR management officials involved in her termination. In fact, Mr. Keogler being disabled himself weighs against any inference of discrimination. *Davis v. Napolitano*, 2010 WL 1403936, at *7 (E.D. Va. Apr. 1, 2010) ("As the government points out, 'an inference of discrimination is highly unlikely where the actor is in the same protected class as Plaintiff.'" (quoting *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991))).

Ms. Patterson also claims that evidence of unlawful animus can be found in the "long factual record showing that Ms. Patterson's cancer diagnosis and treatment was becoming burdensome to HMR." (Opp'n 38.) This is factually untrue, as demonstrated by Plaintiff's omission of any record citation in support of this argument. *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011) ("[U]nsubstantiated factual contentions found in the summary judgment briefs are simply not enough to stave off summary judgment.") (*See* Opp'n 28, 38.) As explained in

14

HMR's opening brief, Plaintiff requested, received, and returned from FMLA leave without incident. (SUMF ¶¶ 24-30.) Plaintiff then underwent a course of six (6) chemotherapy treatments, of which four (4) went without incident. (*Id.* at ¶¶ 31-40.) Only on the last two occasions, January 18 and February 8, 2021, did Ms. Patterson experience minor difficulty finding coverage for the last hour of her shift, having to call someone other than Ms. Jones to cover for her. (*Id.* at ¶ 35.)[14] While Ms. Patterson found this stressful, there is no evidence that HMR found it burdensome. And, even had HMR management found it so—an assertion without any factual basis—that burden disappeared on February 8, the date of Plaintiff's last chemotherapy treatment. (SUMF ¶ 31.)

In support of her claim, Plaintiff points to her belief that Ms. Chase and Ms. Jones found this shift coverage—a whole two hours[15]—annoying. (Opp'n 28, 38.) There is no objective evidence from documents or testimony showing that Ms. Jones or Ms. Chase—someone whose entire job involved shuffling of personnel to cover shifts—found Plaintiff's requests to be a minor annoyance, let alone so bothersome as to cause them to retaliate. While understandable that Ms. Patterson could find Ms. Jones's alleged curt responses, shrugged shoulders, and dismissive hand gestures as unsupportive in the face of her serious medical challenges, there is no *objective* evidence that Ms. Jones behaved this way because of Plaintiff's cancer or because of Plaintiff's complaints about shift coverage. *Stewart v. Morgan State Univ.*, 606 F. App'x 48, 49 (4th Cir. 2015) (subjective beliefs about discrimination are "insufficient to create a genuine issue of material fact as to any discriminatory conduct on [employer's] part" (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 (4th Cir. 2002 ))). In fact, and as Defendant expected, Plaintiff argues wholly

---

[14] Plaintiff's representation of the frequency of the coverage issues and how often she had to call Ms. Chase are grossly exaggerated and not supported by even her own testimony.

[15] Plaintiff testified that she requested HMR provide someone to cover the last hour of her shift (6:00 a.m. to 7:00 a.m.) on the days of her chemotherapy appointments. (Patterson Dep. 87:3-106:17.) So, according to plaintiff the "a lot of accommodation" she required for her chemotherapy and the "extreme burden" at issue here was one hour on January 18 and one hour on February 8. (*See* Opp'n 27.) No reasonable juror could so find.

without any *corroborating* evidence that Ms. Jones was aware of her complaints, let alone Mr. Keogler or Ms. Smith. (*Compare* SUMF ¶ 41 *with* Opp'n 34 (including citation to Ms. Jones's deposition that does not support argument.) Plaintiff's arguments contradict her own testimony that she never spoke to Mr. Keogler, Ms. Smith, or Ms. Jones about these issues. (Patterson Dep. 81:21-82:16, 98:20-99:15, 100:17-22.) Instead, Plaintiff attempts to survive summary judgment by asking the Court to infer, without evidence, that Ms. Chase[16] informed the management officials of her concerns about shift coverage, which is inadequate at this stage. *Smith*, 832 F. Supp. 2d at 586 ("She infers from these relationships that the decisionmakers must have known of her protected activity because Garcia was aware of it; . . . Yet without any evidence, that is too speculative an inference, particularly given that the relevant decisionmakers have all sworn to their lack of knowledge.") (*See* Opp'n 27.) Without proof of knowledge of her purported protected activity, Plaintiff cannot establish her retaliation prima facie case, let alone pretext.[17] *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021).

Finally, Plaintiff argue that Dovetailing with this question of notice is Plaintiff's last argument that temporal proximity between her requesting coverage for her shift and the timing of the adverse action creates a triable question of fact. (Opp'n 17, 30, 34.) Assuming *arguendo* Plaintiff could prove she engaged in protected activity about which HMR management was aware on January 18 and February 8, Plaintiff's argument crumbles because proximity alone is not sufficient to prove causation at the pretext stage. *Roberts*, 998 F.3d at 126 ("An adverse action that

---

[16] Assuming Ms. Patterson did make such a complaint, Ms. Chase is not, and was not, a member of HMR's management and so any knowledge of this complaint would not impute to Defendant.

[17] Ms. Patterson's argument about Ms. Jones's "motive" to retaliate is not logical. On the one hand, Plaintiff claims that Ms. Jones had motive to retaliate against Ms. Patterson because she wanted more overtime hours, presumably those Ms. Patterson worked. (Opp'n 24.) Then, on the other hand, Ms. Jones held a grudge against Ms. Patterson because she (Ms. Jones) had to fill in for Ms. Patterson on the days she left early for chemotherapy. (*Id.* at 38.) Even if this did make sense, which it does not, Plaintiff relies exclusively on inadmissible hearsay statements from Ms. Chase, which are not sufficient at this procedural stage. *Barnes v. Montgomery Cty.*, 798 F. Supp. 2d 688, 691 (D. Md. 2011).

bears sufficient temporal proximity to a protected activity may, *along with the existence of other facts*, suggest that the adverse employment action occurred because of the protected activity." (emphasis added)); *Iwebo v. Sheppard Pratt Health Sys., Inc.*, 2022 WL 3681956, at *9 (D. Md. Aug. 24, 2022) (In cases in which the court has denied summary judgment at the pretext stage of the *McDonnell Douglas* framework, there has been a specific proffer of evidence of pretext in addition to evidence of close temporal proximity."); *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d 459, 474-75 (D. Md. 2016) (same). So, this too, fails.

Plaintiff has failed to carry her burden to show the existence of genuine issues of material fact necessary to preclude summary judgment. For these reasons, the Court should enter judgment as a matter of law in Defendant's favor.

**B.      There are numerous defects in Plaintiff's effort to persuade the Court that material facts are genuinely disputed.**

HMR has met its initial burden of demonstrating the absence of a genuine dispute as to any material fact. Having done so, to defeat summary judgment, Plaintiff is required to rely on more than "conclusory" allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a *material* fact.[18] *See Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Because she

---

[18] A "material fact" is a fact that might affect the outcome of a party's case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986); *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

has not done this, the Court should grant judgment in HMR's favor.

Plaintiff disputes fourteen (14) paragraphs of HMR's Statement of Undisputed Facts out of a total of ninety-nine (99). Of these fourteen paragraphs, only fourteen (14) are material. Those are the facts pertaining to (1) when HMR's Abuse Reporting Policy (including the 2-hour window) is triggered (SUMF ¶¶ 57, 81) (2) when Ms. Patterson learned of the incident between GNA Dandridge and the resident, "Ms. L." (SUMF ¶¶ 51, 52), (3) whether Ms. Jones violated HMR's Abuse Reporting Policy (SUMF ¶¶ 61, 84), and (4) whether Defendant in good faith believed that Ms. Patterson had violated its Abuse Reporting Policy at the time that it terminated her (SUMF ¶¶ 90, 93, 96, 97). The remainder—indeed, including whether Ms. Jones told Ms. Patterson that she "should have taken better care of herself" during the termination meeting—are not material because they will not change the outcome of the motion. *Chestnut*, 2020 WL 201056, at *7. Plaintiff's attempts to create a genuine dispute of these facts fails for several reasons.

First, Plaintiff's efforts to create a genuine dispute of material fact fail because she does not comply with her evidentiary obligations pursuant to Rule 56(e). Rule 56(e) requires that a party responding to a motion for summary judgment do so with affidavits, depositions, or other admissible evidence in order to reflect that there are material facts that must be presented to a jury for resolution. Fed. R. Civ. P. 56(e). In response to several of Defendant's undisputed material facts Plaintiff either in whole, or in part, fails to cite to any evidence in the record. Plaintiff's entire response to Paragraph 61 for example, and large portions of her responses to Paragraphs 51, 52. (Opp'n 5, 6, 10.) A large portion of Plaintiff's rebuttal is not factual at all, but is instead Plaintiff's legal argument and interpretation of the facts. (*Id.* at 4, 6, 9, 10, 16.) This comes in the form of blatant argument, assigning statements of intent to witnesses that are not directly supported by the

record[19], and numerous instances where Plaintiff poses sarcastic hypothetical questions aimed at undermining the witness's credibility as opposed to pointing to cold-hard record evidence. (*Id.* at 6, 8, 14.) *Barimah v. Bank of Am., Inc.*, 2016 WL 4089564, at *3 (D. Md. Aug. 2, 2016) ("In the absence of supporting evidentiary materials, an attorney's *ipse dixi* argument about the facts is not sufficient to raise disputes of material fact."); *Hoffman*, 2022 WL 888435, at *5 (attacking a witness's credibility does not create a genuine dispute of material fact). Such tactics, however, do not create genuine disputes of material fact. *E.g.*, *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) ("[T]he nonmoving party [cannot] 'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985))).

In the instances where Plaintiff does cite to record, as rare as this may be, they are still insufficient to create a genuine dispute of material fact. Most often this is because the evidence Plaintiff cites is her own self-serving testimony, which is insufficient to survive summary judgment. *E.g.*, *Wadley v. Park at Landmark, LP*, 264 F. App'x 279, 281 (4th Cir. 2008) ("[Plaintiff's] own self-serving, unsubstantiated statements in opposition to [Defendants'] evidence in this regard is insufficient to stave off summary judgment."). Plaintiff's statements of opposing facts, and indeed her Opposition in its entirety, are replete with blatant statements of belief for critical elements of her claim; one such made in response to Paragraph 96 where Plaintiff states that she "testified generally how she ***believed*** Ms. Jones expressed frustration regarding her cancer." (Opp'n 16.)

When she does cite to other evidence, she cherry-picks particular sound bites that support

---

[19] For example, in an effort to explain away testimony from Ms. Smith that supports Defendant's position, Plaintiff all but claims that she committed perjury. (Opp'n 9 ("However, once Ms. Smith realized that parallels were going to be drawn to Ms. Patterson, she quickly changed her testimony.").)

her argument but that omit important context and/or subsequent testimony. For example, in an effort to create doubt as to HMR's legitimate explanation for terminating Ms. Patterson, Plaintiff asserts that "[e]ven Ms. Jones questioned whether abuse had taken place based off of her early morning conversation with Ms. King." (Opp'n 13.) The snippet of deposition testimony Plaintiff cites (Jones Dep. 14:13-20) seemly supports her contention, but only because she omits the testimony immediately subsequent that contradicts her contention and supports Defendant's rationale for terminating Plaintiff. (*Id.* at 14:21-15:4 (Q: "What do you mean by questioned that? Did you believe after talking with Ashley King that an event occurred that needed to be reported to the State?" A: "That was, yes.").)[20]

All told, Plaintiff's efforts to create genuine issues of material fact so as to survive summary judgment, while valiant, do not pass Rule 56(e)'s muster and, as a result, the Court should enter judgment as a matter of law in Defendant's favor.

## III.    CONCLUSION

For the foregoing reasons, Defendant HMR of Maryland, LLC requests that the Court enter judgment as a matter of law in Defendant's favor as to the entirety of Plaintiff's Amended Complaint.

---

[20] Plaintiff also frequently mischaracterizes deposition testimony in the section of her Opposition titled "Supplemental Facts not Proffered by HMR." One particularly important mischaracterization is her assertion that "Ms. Smith was aware that Ms. Patterson was making these complaints prior to Ms. Patterson's termination from HMR." (Opp'n 23 (citing Smith Dep. 37:12-17).) When that portion of the deposition transcript is examined, however, *at best* Ms. Smith's testimony is unclear about when she learned that Ms. Patterson had complained about not having coverage for the end of her shifts on a few occasions. (Ex. E, Smith Dep. 37:1-17 (Q. "Were you aware of any instances where Petra Patterson was complaining that people were not showing up on time and that was delaying her leaving to go to her chemotherapy treatment?" A: " Was I aware that people were not showing up on time?" Q. "Yes." A. "Yes. Towards the end, towards -- maybe, almost, I think I was told that maybe once or twice but not by Petra or it was more so after all this occurred." Q. "Well, let's, did you know prior to Petra Patterson's termination that there were issues with people not showing up to, not showing up for the shift immediately after Petra's work shift ended?" A. "Yes.").) This testimony is distinctly different than how Plaintiff portrays it. Instead of admitting that she knew that Plaintiff had complained about not getting the relief she requested, the only clear admission Ms. Smith makes is that prior to Ms. Patterson's termination she knew that there were issues with shift coverage. Knowing about issues of shift coverage is entirely different than knowing that Plaintiff complained about lack of shift coverage, a distinction Plaintiff just happens to overlook.

Dated: November 11, 2022                    Respectfully submitted,

                                             /s/ Meredith L. Schramm-Strosser
                                            Meredith L. Schramm-Strosser (Bar No. 18537)
                                            LITTLER MENDELSON, P.C.
                                            815 Connecticut Avenue, NW, Suite 400
                                            Washington, DC 20006-4046
                                            202.842.3400 Telephone
                                            202.842.0011 Facsimile
                                            Mschramm-strosser@littler.com

                                            L. Traywick Duffie, *pro hac vice*
                                            LITTLER MENDELSON, P.C.
                                            3424 Peachtree Road NE, Suite 1200
                                            Atlanta, GA 30326
                                            404.233.0330 Telephone
                                            404.233.2361 Facsimile
                                            Tduffie@littler.com

                                            *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 11, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF filing system, and that copies were served electronically via the

Court's ECF system, upon the following:

James M. Ray, II
Andy Toland
RAY LEGAL GROUP, LLC
8729 Georgia Avenue, Suite 803
Silver Spring, Maryland 20910

*Counsel for Plaintiff*

                                             /s/ *Meredith L. Schramm-Strosser*
                                            Meredith L. Schramm-Strosser